Humberto ROBINSON, by Jane Robinson, Legal Guardian, and Jane Robinson, Respondents,

v.

MOUNT SINAI MEDICAL CENTER, a domestic corporation, Wisconsin Health Care Liability Insurance Plan, and Patients Compensation Fund, Appellants.†

Court of Appeals

*No. 84–2301. Submitted on briefs July 2, 1985.—Decided October 4, 1985.*
(Also reported in 379 N.W.2d 326.)

---

† Petition to review granted.

For the appellants the cause was submitted on the briefs of *Zirbel, Howard & Malone, S.C.,* with *Irving W. Zirbel* and *Kathleen E. Bonville* of counsel, of Milwaukee.

For the respondents the cause was submitted on the briefs of *Theodore W. Harris* of Racine.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J. This appeal involves the accrual of a cause of action for medical malpractice, where successive

actors have participated in a continuum of allegedly negligent treatment. The appellants are a hospital, its insurer, and the Patients Compensation Fund (collectively, Mount Sinai). The respondents, Humberto and Jane Robinson, are a severely brain-damaged young man and his mother, plaintiffs in this medical malpractice action. Mount Sinai appeals from the circuit court's nonfinal order denying its motion for summary judgment based on the statute of limitations. We have previously granted Mount Sinai's petition for leave to appeal. We hold that the Robinsons' cause of action did not accrue until the end of the continuum of negligent treatment that resulted in Humberto's injury. Thus, the Robinsons submitted their controversy to the Patients Compensation Fund within the statutory period and their claim is not time-barred. Accordingly, we affirm the order of the circuit court.

The facts as presented in the circuit court's memorandum decision are undisputed.

Humberto was examined at the Mount Sinai emergency room on January 20, 1979, when he was sixteen years old. He had a toothache and had been vomiting. A resident allegedly misdiagnosed Humberto's condition and did not adequately treat him. Humberto's condition worsened. He returned to Mount Sinai with his eye swollen shut on January 23, 1979, when he was examined by a Dr. Ryan. Dr. Ryan admitted Humberto to Milwaukee Children's Hospital (Children's). She was on staff at both Mount Sinai and Children's and was Humberto's attending physician throughout the course of his treatment. Dr. Ryan's notes were made on Mount Sinai forms and were apparently kept at Mount Sinai, even though Humberto was not seen there after January 23, 1979.

During a lengthy stay at Children's, Humberto underwent several allegedly negligent surgical procedures in which Dr. Ryan and three additional doctors participated to drain abcesses in Humberto's skull. His condition progressively worsened until he suffered a grand mal sei-

zure and extensive brain damage. He underwent a final surgical procedure on April 11, 1979, and was discharged on September 13, 1979.

A submission of controversy was filed with the Patients Compensation Panel on Humberto's behalf on April 7, 1982, naming both hospitals, Dr. Ryan, and the three other doctors. The panel dismissed the controversy against Mount Sinai and one of the doctors, concluding that the statute of limitations had run. The Robinsons then brought this action against Mount Sinai.

Because the material facts concerning the statute of limitations issue are undisputed, we are left with a question of law that we must decide independently without deference to the trial court's decision. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

Mount Sinai contends that any negligence on its part occurred no later than January 23, 1979, and that consequently the three-year statute of limitations, sec. 893.205(1), Stats. (1977), had run by the time the controversy was submitted to the panel on April 7, 1982. Mount Sinai further contends that because Humberto was not disabled by reason of insanity on January 23, 1979, the Robinsons are not entitled to extend the three-year period for up to five years as provided in sec. 893.33, Stats. (1977).

We disagree. The alleged negligence of Mount Sinai and the subsequent alleged negligence of Children's, Dr. Ryan, and the other doctors constituted a continuum of negligence resulting in only one cause of action, which accrued at the end of the continuum. The continuum ended sometime between April 11, 1979, when the final operation took place, and September 13, 1979, when Humberto's treatment at Children's ceased. Moreover, the Robinsons are entitled to an extension of time of up to five years under sec. 893.33, Stats. (1977), if Humberto was insane when the cause of action accrued.

To determine whether the Robinsons' action was timely brought, we must first determine when the cause of action accrued. A cause of action is "a factual unit, whose limits are determined by the time and sequence and unity of the happenings." *Tamminen v. Aetna Casualty & Surety Co.,* 109 Wis. 2d 536, 556, 327 N.W.2d 55, 64 (1982) (citation omitted). A cause of action accrues when the injury is discovered or with reasonable diligence should have been discovered, whichever occurs first. *Hansen v. A.H. Robins Co.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983).

In *Tamminen,* 109 Wis. 2d at 539, 327 N.W.2d at 56, this concept was explained in the context of a continuum of medical malpractice:

> [W]here it is alleged and affidavits on summary judgment state that there is a continuing course of negligent treatment, but one cause of action or claim is stated; and, hence, if any portion of the continuing course of negligent treatment falls within the period of limitations, the entire cause of action is timely brought.

The *Tamminen* court relied on *Ewing v. General Motors Corp.,* 70 Wis. 2d 962, 236 N.W.2d 200 (1975), which stated that "there is only one cause of action if there is only one grouping of facts falling into a single unit or occurrence as a lay person would view them." *Id.* at 967, 236 N.W.2d at 202 (quoted in *Tamminen,* 109 Wis. 2d at 557, 327 N.W.2d at 64). The *Ewing* rationale is employed "where there is a continuum of negligent conduct." *Tamminen, id.,* 327 N.W.2d at 64–65. In such a case, "the cause of action is not complete until the last date on which the malpractice occurred," and timeliness is measured from that date. *Id.* at 559, 327 N.W.2d at 65.

The *Tamminen* court explicitly declined to adopt the continuous treatment doctrine. *Id.* at 553, 327 N.W.2d at

63; *see also Boehm v. Wheeler,* 65 Wis. 2d 668, 680, 223 N.W.2d 536, 542 (1974) (continuous treatment doctrine is for the legislature, not the court system, to consider). Under that doctrine, "the mere fact that there has been continuous treatment, whether negligent or not, for a condition occasioned by a prior negligent act, is sufficient to start the statute of limitations running only at the end of the course of treatment." *Tamminen,* 109 Wis. 2d at 553–54, 327 N.W.2d at 63; *see, e.g., Borgia v. City of New York,* 187 N.E.2d 777, 778 (N.Y. 1962).

The *Tamminen* court preferred the approach followed in Oregon and Virginia. For example, in *Hotelling v. Walther,* 130 P.2d 944 (Ore. 1942), the high court of Oregon stated that "[t]he alleged negligent treatment of the plaintiff must be considered as a whole. . . . The continued negligent treatment constituted but a single cause of action. Where the tort is continuing, the right of action is continuing." *Id.* at 946 (quoted in *Tamminen,* 109 Wis. 2d at 554, 327 N.W.2d at 63); *see also Farley v. Goode,* 252 S.E.2d 594, 599 (Va. 1979) (duration of cause of action is coextensive with tortious conduct). This rationale "is consistent with the Wisconsin theory of a cause of action." *Tamminen,* 109 Wis. 2d at 556, 327 N.W.2d at 64.

Mount Sinai argues that because *Tamminen, Hotelling,* and *Farley* each involved a single negligent actor, *Tamminen* is inapplicable here. Mount Sinai is factually correct, but nothing in *Tamminen's* language limits its holding to a situation with a single negligent actor. In fact, *Tamminen's* reliance on *Ewing* for its cause of action theory indicates that its holding should not be so limited.

The *Ewing* court held that the successive negligence of several actors, culminating in one auto accident, constituted only one cause of action. The crucial factor in determining whether a single cause of action existed was how the occurrence would be viewed by a lay person. *Ewing,* 70 Wis. 2d at 967, 236 N.W.2d at 202. In the case at base, we agree with the circuit court that a lay person reason-

ably would view the entire course of Humberto's negligent treatment as a single occurrence and, thus, as a single cause of action. Here, as in *Ewing,* there is only one subject of controversy (Humberto's brain damage), one primary right (his right to be free from medical malpractice) and, consequently, only one cause of action. *See id.* As the circuit court stated in its memorandum decision, the "existence of a cause of action should not turn up[on] technical medical considerations beyond the ken of a lay person acting reasonably."

We hold that a single cause of action arises from a continuum of negligent medical treatment, whether by a single actor or by successive actors, that results in personal injury. The cause of action accrues at the end of the continuum but embraces its entirety. Thus, a suit against one who acted negligently at the beginning of the continuum is not time-barred if the end of the continuum falls within the limitations period.

The Robinsons' cause of action accrued between April 11, 1979, the date of the last allegedly negligent surgery, and September 13, 1979, when Humberto was discharged from the allegedly negligent care of Dr. Ryan and Children's. The cause of action embraces the entire continuum of negligence that began at Mount Sinai on January 20, 1979. The earlier date, April 11, 1979, is within the three-year statutory period under sec. 893.205(1), Stats. (1977). Because the end of the continuum of negligence was within the statutory period, the Robinsons' cause of action against Mount Sinai is not time-barred.

We note also that the crucial date for determining whether the Robinsons are entitled to a five-year extension of the limitation period under sec. 893.33, Stats. (1977), is the date on which the cause of action accrued. Thus, the question of Humberto's insanity must be deter-

291

mined as of the end of the continuum of negligence. His mental condition on January 23, 1979, is irrelevant. The record indicates that Humberto may have been insane as early as March, 1979. Therefore, even if the continuum of negligence ended more than three years prior to the filing date of April 7, 1982, the Robinsons would be entitled to an extension of the limitation period of up to five years if Humberto was insane when the cause of action accrued. *See* sec. 893.33 (1977).

Of course, it is incumbent upon the Robinsons to prove at trial that negligence persisted at least until April 7, 1979, or that Humberto was insane when the negligence ceased. By concluding that this action was timely brought, we merely give the Robinsons an opportunity to prove their factual allegations regarding the existence and duration of a continuum of negligent treatment. *See Tamminen,* 109 Wis. 2d at 560, 327 N.W.2d at 66.

For the foregoing reasons, we affirm the circuit court's order denying Mount Sinai's motion for summary judgment.

*By the Court.*—Order affirmed.